IN THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (CLEVELAND)

| | |
|---|---|
| SHANE HARDYMON, | CASE NO.: |
| Plaintiff, | JUDGE: |
| *vs.* | REFILING OF CASE NO. 1:22-cv-00724-SO |
| SHERIFF SCOTT M. KENT, in his individual and official capacities, | **CIVIL COMPLAINT** |
| and | *Jury Demand Endorsed Hereon* |
| THE BOARD OF COMMISSIONERS OF CRAWFORD COUNTY, OHIO / CRAWFORD COUNTY, OHIO | |
| and | |
| SGT. TYSON ESTRADA, in his individual and official capacities, | |
| and | |
| DEPUTY BRANDON M.A. COTTRILL, in his individual and official capacities, | |
| and | |
| DEPUTY CORY J. GEYER, in his individual and official capacities, | |
| and | |
| DEPUTY DANIEL J. WILLIAMSON, in his individual and official capacities, | |
| and | |
| ADMINISTRATOR KENT RACHEL, in his individual and official capacities, | |
| and | |
| BRIAN R. WILLIAMS, | |

*and*

MICHAEL P. DAVIS,

*and*

JOHN/JANE DOE NOS. 1-5, true names and identities undiscoverable at this time, in their individual and official capacities,

    Defendants.

Plaintiff Shane Hardymon states his Complaint against Defendants Sheriff Scott M. Kent; the Board of Commissioners of Crawford County, Ohio / Crawford County, Ohio; Sergeant Tyson Estrada; Deputy Brandon M.A. Cottrill; Deputy Cory J. Geyer; Deputy Daniel J. Williamson, Administrator Kent Rachel, Brian R. Williams, Michael P. Davis, and John/Jane Doe Nos. 1-5 as follows:

### INTRODUCTION

1. Plaintiff Shane Hardymon brings this civil rights action against the Defendants for using unnecessary and excessive force against him; maintaining a custom, policy, or practice of deliberate indifference to the serious medical needs of individuals held in the custody of the Crawford County Sheriff's Office; and maintaining inadequate training, education, supervision, and discipline of Crawford County Sheriff's Office Corrections Officers.

2. Mr. Hardymon also brings this action to redress the denial of adequate medical care accorded to him while in the custody and control of the Crawford County Sheriff's Office, and for medical malpractice committed by Defendants Brian R. Williams and Michael B. Davis.

3. The acts and omissions of the Defendants amounted to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments of the United States Constitution, and they directly and proximately caused Mr. Hardymon severe and lasting medical injuries, pain and suffering, severe emotional distress, and economic damages.

4. This is a re-filing of Case No. 1:22-cv-00724-SO, which was dismissed without prejudice on or about August 16, 2023.

**PARTIES, JURISDICTION, AND VENUE**

5. Plaintiff Shane J. Hardymon re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

6. Mr. Hardymon is, and at all times relevant to this action was, an individual residing in Crawford County, Ohio.

7. Defendant Sheriff Scott M. Kent ("Sheriff Kent") is, and at all times relevant to the events described in this Complaint was, an individual employed by the Crawford County Sheriff's Office ("CCSO"). He is a "person" under the meaning of 42 U.S.C. § 1983. He is sued in both his individual and official capacities. Along with Defendant Board of Commissioners of Crawford County, Ohio, he is hereafter referred to as a "County Defendant."

8. Defendant Board of Commissioners of Crawford County, Ohio ("BOC")/ Crawford County, Ohio, is a political subdivision located in Crawford County, Ohio. It is a "person" under the meaning of 42 U.S.C. § 1983. Along with Defendant Sheriff Kent, it is collectively referred to as a "County Defendant."

9. On information and belief, Defendant Sergeant Tyson Estrada ("Sergeant Estrada") is, and at all times relevant to the events described in this Complaint was, employed by CCSO in the capacity of Sergeant Corrections Officer. He is a "person" under the meaning of 42 U.S.C. § 1983 and is sued in both his individual and official capacities. Along with Defendant Deputies Brandon Cottrill, Cory Geyer, and Daniel Williamson, he is collectively referred to as a "Corrections Defendant."

10. On information and belief, Defendant Deputies Brandon Cottrill, Cory Geyer, and Daniel Williamson ("Deputy Cottrill," "Deputy Geyer," and "Deputy Williamson") are and, at all times relevant to the events described in this Complaint were, employed by CCSO as Deputy Corrections Officers. They are

each "persons" under the meaning of 42 U.S.C. § 1983 and are sued in both their individual and official capacities. Along with Defendant Sergeant Estrada, they are collectively referred to as "Corrections Defendants."

11. On information and belief, Defendant Kent Rachel ("Administrator Rachel") is, and at all times relevant to the events described in this Complaint was, employed by CCSO in the capacity of jail administrator. He is a "person" under the meaning of 42 U.S.C. § 1983 and is sued in both his individual and official capacities.

12. On information and belief, Defendant Michael P. Davis is, and at all times relevant to the events described in this Complaint was, a physician licensed to practice medicine in Ohio, who holds himself out to the public as a person competent to render health care to the public, including Mr. Hardymon.

13. Defendant Michael P. Davis is a physician licensed to practice medicine in Ohio, who holds himself out to the public as a person competent to render health care to the public, including Mr. Hardymon.

14. Collectively, Defendants Brian R. Williams and Michael P. Davis are hereafter referred to as the "Medical Defendants."

15. John/Jane Doe Nos. 1-5 are individuals and entities whose true identies are yet unknown, who were or are employed by the CCSO at all times relevant to the events described in this Complaint, and who are "persons" under the meaning of 42 U.S.C. § 1983.

16. On information and belief, all or some of the County Defendants were responsible for establishing policies, procedures, and training methods for the Crawford County Sheriff's Office and/or Crawford County Jail. These policies, procedures, and training methods include the use of force and adequate medical care.

17. At all times relevant to this action, each of the non-Medical Defendants acted under color of state law.

18. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1988.

19. The unlawful actions alleged in this Complaint took place within the jurisdiction of the United States District Court for the Northern District of Ohio.

## FACTUAL ALLEGATIONS

20. Mr. Hardymon re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.
21. In March 2020, Mr. Hardymon was confined to the Crawford County Jail as a result of nonviolent drug possession charges.
22. At intake, Mr. Hardymon advised that he had heart problems, including a previous myocardial infarction. It was noted at intake that he "appear[ed] paranoid" and had a nervous disorder.
23. As of May 4, 2020, Mr. Hardymon remained in the custody of the CCSO.
24. Mr. Hardymon had been experiencing serious chest pains and shortness of breath.
25. Mr. Hardymon verbally communicated his medical concerns and also utilized the emergency button in his cell.
26. He received no assistance.
27. On May 4, 2020, Mr. Hardymon tried to get CCSO staff's attention. Mr. Hardymon sat down on the floor next to a bench in the booking area and he shackled his feet to the bench, in hopes of showing that he posed no threat.
28. The Corrections Defendants approached.
29. Mr. Hardymon attempted to communicate his medical needs to them.
30. In response, he received insufficient, unclear, contradictory and/or impossible verbal commands.
31. The Corrections Defendants surrounded him and made physical contact with him, jerking him around by his torso and then pushing him to the ground.
32. Mr. Hardymon's actions posed no threat to CCSO staff or any inmates.
33. With insufficient or no warning, and following insufficient, unclear, contradictory, and/or impossible verbal commands, Defendant Deputy Williamson used a Taser on Mr. Hardymon, which landed in his groin area.

34. The Corrections Defendants continued to strike him, no fewer than three times; choked him; and one of the Defendants placed his full weight onto Mr. Hardymon's upper back and neck.
35. Mr. Hardymon was shackled and on the ground this entire time.
36. The Corrections Defendants then transferred a limp Mr. Hardymon to a restraint chair.
37. In the process of trying to pick Mr. Hardymon up, Sergeant Estrada grabbed Mr. Hardymon by his hair in an attempt to lift him.
38. Once Mr. Hardymon was seated in the chair, Deputy Cottrill grabbed Mr. Hardymon forcefully by his chin, over-extending his neck.
39. Subsequently, Sergeant Estrada kicked a seated Mr. Hardymon; Deputy Cottrill twisted and pushed Mr. Hardymon's head down; and Sergeant Estrada punched Mr. Hardymon in the head again.
40. Two Correctional Defendants yanked his body in opposite directions: one pulling his left arm aggressively, while another yanked and pushed his torso and neck in the opposite direction.
41. He continued to receive insufficient, unclear, and/or impossible verbal commands.
42. The assault continued, and each and every Corrections Defendant participated in the assault and used excessive force, all while Mr. Hardymon was seated and not resisting or posing any threat.
43. All of this is captured on a closed-caption video.
44. In the words of the orthopedic specialist Mr. Hardymon later consulted, "the CO's treatment of the inmate in the video showed the inmate's cervical spine visibly and forcefully compressed, flexed, and torqued multiple times."
45. As a direct and proximate result of the Defendants' assault, Mr. Hardymon suffered serious and lasting injuries.
46. He never used a wheelchair prior to the assault. But as a result of the assault, Mr. Hardymon was left largely unable walk under his own power.
47. He spent much of his time on the jail cell floor.

48. For the first few months after the assault, the CCSO provided him a wheelchair for purposes of seeing his attorney or going to court, but not for use in the jail.
49. Mr. Hardymon made numerous complaints to the CCSO staff about his back and neck pain, and his inability to walk.
50. He was finally given a wheelchair for full-time use several months later.
51. He received inadequate and indifferent medical care that amounted to cruel and unusual punishment and medical malpractice.
52. While CCSO did have Mr. Hardymon seen by medical staff—the Medical Defendants—he continued to suffer and report that he was in serious pain and unable to walk.
53. The medical staff who provided care to Mr. Hardymon while in the custody and control of the County included Defendant Drs. Michael P. Davis and Brian R. Williams.
54. Mr. Hardymon made multiple requests for medical assistance, including to Defendant Rachel, and received indifferent, inadequate, or no response.
55. In July 2020, Defendant Cottrill took Mr. Hardymon's wheelchair away.
56. As a result, Mr. Hardymon was forced to urinate in bottles or on the floor.
57. On information and belief, multiple inmates reported their concerns to CCSO staff.
58. Mr. Hardymon also reported these concerns to CCSO staff, including to Defendant Rachel, and was met with an indifferent response, inadequate response, or no response each time.
59. CCSO staff made jokes of this, for instance, by announcing over the intercom that Mr. Hardymon was to report to booking, knowing that he could not physically get there.
60. On October 29, 2020, the Crawford County Court of Common Pleas found Mr. Hardymon incompetent to stand trial.
61. He was conveyed to Twin Valley Behavioral Health, restored to competence, and returned to the Crawford County Jail in April 2021.

62. Immediately upon his return to the jail, the mistreatment of Mr. Hardymon continued, with CCSO staff requiring him to stand up from his wheelchair and forcibly manipulating his leg, resulting in him falling to the ground.
63. He was once again denied his wheelchair, and forced to crawl along the floor to get to the toilet.
64. Only in August 2021-after the intervention of a nonprofit group-was Mr. Hardymon finally afforded adequate medical care, and a proper diagnosis was rendered.

### FIRST CAUSE OF ACTION

**Violations of 42 U.S.C. § 1983 Excessive Use of Force -
Fourth, Eighth, and Fourteenth Amendments to the United States Constitution**

**(Against Defendants Estrada, Cottrill, Geyer, and Williamson)**

65. Mr. Hardymon re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.
66. Defendants Sergeant Estrada and Deputies Cottrill, Geyer, and Williamson (the "Corrections Defendants") used excessive force against Mr. Hardymon and thus violated his rights under 42 U.S.C. § 1983 and the Fourth, Eighth, and Fourteenth Amendments to the Constitution.
67. Mr. Hardymon posed no immediate threat to the safety of the Corrections Defendants or others, was not actively resisting or evading, and was not engaged in any serious crime.
68. These Corrections Defendants' excessive force was the direct and proximate cause of Mr. Hardymon's medical injuries, pain, suffering, emotional distress, and mental anguish.
69. These Corrections Defendants also failed to protect Mr. Hardymon against excessive force used by the other Corrections Defendants.
70. It was clearly established at the time of these events that the Defendants' actions violated Mr. Hardymon's constitutional rights.
71. These Defendants acted willfully, maliciously, and with wanton disregard for the rights of Mr. Hardymon by using excessive force against him.

72. These Defendants acted with deliberate indifference to Mr. Hardymon's constitutional rights.

73. These Defendants are liable, and Mr. Hardymon is entitled to recover, under 42 U.S.C. § 1983.

### SECOND CAUSE OF ACTION

**Violations of 42 U.S.C. § 1983**
**Deliberate Indifference - Failure to Provide Adequate Medical Care**
**(Eighth and Fourteenth Amendments to the United States Constitution)**

**(Defendants Rachel and John/Jane Doe Nos. 1-5)**

74. Mr. Hardymon re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

75. Defendants Kent Rachel and John/Jane Doe Nos. 1-5 acted with deliberate indifference to Mr. Hardymon's serious medical needs and thus violated his rights under 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the Constitution to be free of cruel and unusual punishment, by failing to provide him proper medical care after the assault and excessive force.

76. These acts and omissions were the direct and proximate cause of Mr. Hardymon's medical injuries, pain, suffering, emotional distress, and mental anguish.

77. It was clearly established at the time of these events that the Defendants' actions violated Mr. Hardymon's constitutional rights.

78. These Defendants acted willfully, maliciously, and with wanton disregard for the rights of Mr. Hardymon in denying him adequate medical care.

### THIRD CAUSE OF ACTION

**Municipal Liability; Failure to Adequately Train and Supervise**

**(Defendants Kent and Crawford County Board of Commissioners / Crawford County)**

79. Mr. Hardymon re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

80. On information and belief, Defendants Kent and the Crawford County Board of Commissioners/Crawford County (the "County Defendants") and their

administrators, staff, and managers, had oversight responsibility for the Corrections Defendants, and were responsible for the training, supervision, and discipline of the Corrections Defendants.

81. On information and belief, the County Defendants and their administrators, staff, and managers failed to adequately train and/or supervise the Corrections Defendants with regard to the use of appropriate force and with regard to providing adequate medical care.

82. On information and belief, the County Defendants and their administrators, staff, and managers knew or should have known of past complaints, disciplinary issues, and misconduct on the part of the Corrections Defendants with regard to the Corrections Defendants' use of force and providing adequate medical care.

83. On information and belief, despite knowledge of these concerns, the County Defendants continued to employ the Corrections Defendants, acquiesced to their conduct, failed to properly investigate or discipline the Corrections Defendants, failed to provide remedial training, and failed to properly supervise them.

84. On information and belief, the County Defendants had in effect policies, practices, and customs that permitted, encouraged, and/or allowed the Corrections Defendants' unconstitutional conduct with regard to use of force and adequate medical care.

85. These policies, practices, and customs of the County Defendants were either official in nature, were ratified by the County Defendants, or were so commonly accepted by the County Defendants that they carried the weight of official policy, and they were the moving force behind the constitutional violations committed against Mr. Hardymon.

86. These County Defendants also failed to investigate or discipline the Corrections Defendants for the excessive force used against Mr. Hardymon.

87. These acts and omissions on the part of the County Defendants were the direct and proximate cause of damages to Mr. Hardymon.

88. These acts and omissions on the part of the County Defendants represent deliberate indifference to Mr. Hardymon's constitutional rights.

## FOURTH CAUSE OF ACTION
## Medical Negligence
## (Defendants Brian R. Williams and Michael P. Davis)

89. Mr. Hardymon re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

90. Defendants Brian R. Williams and Michael P. Davis (collectively, the "Medical Defendants") rendered care and treatment to Mr. Hardymon that fell below the acceptable standards of medical care and treatment.

91. The Medical Defendants evaluated Mr. Hardymon after the initial assault. They failed to properly diagnose him.

92. The Medical Defendants, their agents and staff, continued to see Mr. Harydmon after the initial assault. On information and belief, there were multiple indications that the diagnosis and course of treatment were incorrect, including without limitation Mr. Hardymon's complaints of pain, his use of a wheelchair, and his failure to show progress or to recover.

93. The Medical Defendants, each of them, negligently failed to provide proper and appropriate medical care to Mr. Hardymon and negligently failed to use the degree of care and skill ordinarily used by hospitals, physicians, and other medical providers in similar circumstances.

94. While Mr. Hardymon was under their care, the Medical Defendants, each of them, were negligent and deviated from the standard of care, including without limitation by failing to promptly test, diagnose, monitor, and treat him; delaying in providing appropriate care; and failing to provide appropriate care and follow-up care.

95. The Medical Defendants took on the responsibility of caring and treating for Mr. Hardymon but failed to make appropriate differential diagnoses and decisions and failed to administer proper care and treatment.

96. The care and treatment provided to Mr. Hardymon by the Defendants, each of them, fell below the applicable standard of care.

97. As a direct and proximate result of the Medical Defendants' negligence and malpractice, Mr. Hardymon suffered damages.

## JURY DEMAND

98. Mr. Hardymon demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court:

A. Declare that the non-Medical Defendants, jointly and severally, violated his civil rights;

B. Award compensatory damages and pre and post-judgment interest, jointly and severally, from all Defendants, in an amount in excess of three million dollars;

C. Award punitive damages;

D. Award reasonable attorney's fees, court costs, and costs of litigation; and

E. Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

/s/ Rebecca J. Sremack
Rebecca J. Sremack #0092313
Sremack Law Firm LLC
2745 South Arlington Road
Akron, Ohio 44312
Phone: 330.644.0061
Fax: 330.644.7241
info@sremacklaw.com
*Attorney for Shane Hardymon*